**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

THE FIVE STAR LIFE INSURANCE
COMPANY,

        Plaintiff,

vs.                                                      Case No. 3:15-cv-483-J-32JRK

DAPHNE S. SIMPSON and JOSE S.
LANTIGUA,

        Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff The Five Star Life Insurance Company's Motion for Entry of Default Judgment (against Defendant Daphne S. Simpson) (Doc. No. 11; "First Motion"), filed June 1, 2015, and The Five Star Life Insurance Company's Motion for Entry of Default Judgment (against Defendant Jose S. Lantigua) (Doc. No. 16; "Second Motion"), filed July 9, 2015.[2] In the motions, Plaintiff seeks entry of default judgments against Defendants Simpson and Lantigua because they have failed to timely respond to the Complaint (Doc. No. 1; "Complaint") or otherwise appear in this case. See First Motion at 2 ¶¶ 5, 7; Second Motion at 2 ¶¶ 5, 7. The motions were referred to the undersigned upon filing. On July 13, 2015, the Court

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

[2] Recognizing that a copy of the First Motion had not been mailed to Defendant Simpson, the undersigned directed the Clerk of Court to do so in an Order (Doc. No. 17), entered July 13, 2015. As to the Second Motion, although Plaintiff certifies that a copy was mailed to Defendants on June 9, 2015, Second Motion at 3, the undersigned assumes that Plaintiff meant to indicate the date as July 9, 2015.

took the motions under advisement and directed Plaintiff to submit documentation supporting the request for costs, see Order (Doc. No. 17), which Plaintiff filed on July 22, 2015, see The Five Star Life Insurance Company's Memorandum of Law in Support of Its Request for Costs in Its Motions for Entry of Default Judgment as Against Jose S. Lantigua and Daphne S. Simpson (Doc. No. 18; "Supplemental Memorandum" or "Suppl. Mem.").

## I. Background

Plaintiff initiated this action by filing a Complaint (Doc. No. 1) on April 17, 2015, alleging one count of fraud and one count of unjust enrichment. See generally Compl.[3] Both counts are based on Defendants' alleged scheme to fake Defendant Lantigua's death and falsely induce the payment of death benefits under the Five Star Life Insurance Company policy. See generally id.

On April 29, 2015 and June 9, 2015, Plaintiff filed Returns of Service (Doc. Nos. 6, 12) reflecting that Defendants were served with process.[4] On May 14, 2015 and June 29, 2015, Plaintiff moved for entry of default as to Defendants due to their failure to timely respond to the Complaint or otherwise appear. See The Five Star Life Insurance Company's Request for Clerk's Entry of Default (as to Defendant Simpson) (Doc. No. 8); The Five Star Life Insurance Company's Request for Clerk's Entry of Default (as to Defendant Lantigua) (Doc. No. 13). The Clerk of Court entered default against Defendant Simpson on May 15, 2015, see Entry of Default (Doc. No. 10), and against Defendant Lantigua on June 30, 2015, see Entry of Default (Doc. No. 15). To date, Defendants have not appeared in this matter.

---

[3] Attached to the Complaint are several exhibits, labeled A through H. The undersigned refers to these exhibits by the document numbers and page numbers assigned by the Court's Electronic Case Filing System.

[4] The first attempt to serve Defendant Lantigua, who is incarcerated, failed because the U.S. Marshal declined to allow access for service. See Doc. No. 7 (summons to be served on Defendant Lantigua returned unexecuted).

## II.  Applicable Law

Rule 55, Federal Rules of Civil Procedure ("Rule(s)"), provides the requirements for entry of a default judgment. See Fed. R. Civ. P. 55(b)(2).  A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances, the case never has been placed at issue."  Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., 803 F.2d 1130, 1134 (11th Cir. 1986).  All well-pleaded allegations of fact are deemed admitted upon entry of default; however, before entering a default judgment, a court must confirm that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted.  See Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975);[5] see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (stating that "[a] default judgment cannot stand on a complaint that fails to state a claim") (citations omitted).

## III.  Discussion

### A. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because the Complaint alleges damages in excess of $75,000 and the parties are completely diverse.  Compl. at 1-2 ¶¶ 1-4; id. at 7-8 ¶¶ 35, 41.  Plaintiff is a Louisiana corporation with its principal place of business in Virginia, and both Defendants are citizens of Florida.[6]  Id. at 1 ¶¶

---

[5]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all the decisions of the former United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

[6]  Defendant Lantigua is in federal custody and currently housed in the Buncombe County Detention Facility in Asheville, North Carolina.  For diversity jurisdiction purposes, a prisoner generally is a citizen of the state in which he was domiciled prior to incarceration.  See Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1314 (11th Cir. 2009) (citation omitted).  Based on the
(continued...)

1-3.

**B. The Complaint**

    1.  Overview/Background Allegations

The Complaint includes one count of fraud and one count of unjust enrichment, both of which concern the allegations that Defendants conspired to fake Defendant Lantigua's death and thereby deceive Plaintiff to pay more than $500,000 in death benefits pursuant to Defendant Lantigua's insurance policy, under which his wife, Defendant Simpson, was the beneficiary. See Compl. at 3-6 ¶¶ 9-26.  The insurance policy and application for coverage are attached to the Complaint. See Doc. No. 1-1 (policy); Doc. No. 1-2 (application documents).

According to the Complaint, Defendant Simpson, through her attorney, notified Plaintiff on June 5, 2013 that Defendant Lantigua had died of a heart attack. Id. at 3 ¶ 10.  Plaintiff paid $15,000 as an "emergency death benefit" under the terms of the Defendant Lantigua's policy. Id. at 3 ¶¶ 11-12. Defendant Simpson then submitted to Plaintiff a signed statement representing that Defendant Lantigua had died and claiming death benefits under the policy. Id. at 3 ¶¶ 13-14. She also submitted an apparently official report indicating that Defendant Lantigua died in Venezuela on April 17, 2013 and was cremated. Id. at 3-4 ¶ 14.  These documents are attached to the Complaint. See Doc. No. 1-3 (Life Insurance Beneficiary Statement, dated June 21, 2013); Doc. No. 1-4 (U.S. Dep't of State, Report of Death of an American Citizen Abroad). Based on these documents, Plaintiff approved the claim and paid Defendant Simpson $485,214.60, the balance due under the policy. Compl. at 4 ¶ 15.

In the allegations that follow in the Complaint, Plaintiff indicates that in September 2013,

---

[6](...continued)
allegation in the Complaint and attached insurance application documents (for the policy at issue in this case) in which Defendant Lantigua provided a Florida address, see Compl. at 1 ¶ 3; Doc. No. 1-2, at 2, the undersigned concludes that Defendant Lantigua is a citizen of Florida.

when certain evidence led it to believe that Defendant Lantigua was actually alive, Plaintiff demanded that Defendant Simpson return the benefits payment. Id. at 4-5 ¶¶ 16-18; see Doc. No. 1-5 (demand letter). When Defendant Simpson threatened legal action in response, see Compl. at 4 ¶ 19; Doc. No. 1-6 (letter), Plaintiff withdrew the demand but reported its suspicion of fraud to the appropriate Florida agency on October 30, 2013, Compl. at 5 ¶¶ 20-21. The Complaint states that this report "triggered a state and federal investigation into [Defendant] Lantigua's whereabouts and the claims submitted by [Defendant] Simpson to [Plaintiff] and other insurers for life insurance benefits." Id. at 5 ¶ 22.

The investigation led to the arrests of both Defendants. See id. at 5-6 ¶¶ 23-24. Both arrest warrants are attached to the Complaint. See Doc. No. 1-7 (Arrest Warrant for Defendant Lantigua, issued on March 23, 2015 by the Honorable Dennis L. Howell, United States Magistrate Judge, Western District of North Carolina); Doc. No. 1-8 (Arrest Warrant for Defendant Simpson, issued on March 21, 2015 by the Honorable Thomas M. Beverly, Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida). Defendant Lantigua was arrested on March 21, 2015 in North Carolina, where he was accompanied by Defendant Simpson. Compl. at 5-6 ¶¶ 23, 25; see Doc. No. 1-7 (Arrest Warrant (Return) for Defendant Lantigua); Doc. No. 1-8, at 4 (Affidavit for Arrest Warrant Defendant Simpson, indicating that she was in a vehicle with Defendant Lantigua at the time of his arrest). As the Complaint states, Defendant Lantigua's arrest "confirmed that he was alive, that he and his wife, [Defendant] Simpson[,] had perpetrated a wide-ranging fraud against numerous insurers and financial institutions and that [Plaintiff] had paid the death benefit to [Defendant] Simpson under the Policy in reliance upon fraudulent documentation of [Defendant] Lantigua's death." Compl. at 6 ¶ 23. Defendant Simpson was arrested on March 23, 2015 on charges of insurance fraud against a number of insurance

companies, including Plaintiff, based on the scheme to fake the death of Defendant Lantigua. See id. at 6 ¶¶ 24-26; Doc. No. 1-8, at 1-4 (Arrest Warrant and Affidavit).

### 2. Fraud Claim

Count 1 of the Complaint is a fraud claim against both Defendants. See Compl. at 6-7 ¶¶ 28-35. The elements of common law fraud are as follows:

> (1) a false statement of fact, (2) known by the person making the statement to be false at the time it was made, (3) made for the purpose of inducing another to act in reliance thereon, (4) action by the other person in reliance on the correctness of the statement, and (5) resulting damage to the other person.

Kelly v. Nelson, Mullins, Riley & Scarborough, L.L.P., No. 8:01-cv-1176-T-27MAP, 2002 WL 598427, at *7 (M.D. Fla. Mar. 20, 2002) (unpublished) (citing Gandy v. Trans World Comput. Tech. Grp., 787 So. 2d 116, 118 (Fla. 2d DCA 2001)). Fraud claims also must satisfy the heightened pleading standard imposed by Rule 9(b) by setting forth the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)); see also J'Carpc, LLC v. Wilkins, No. 1:06-cv-02357-WSD, 2007 WL 4287765, at *5 (N.D. Ga. Dec. 5, 2007) (unpublished) (applying Rule 9(b) to a fraud claim in ruling on a motion for default judgment).

Here, as to Count I, the Complaint alleges that both Defendants "conspired to fake [Defendant] Lantigua's death, and to intentionally deceive [Plaintiff] into prematurely paying the Death Benefit to [Defendant] Simpson." Compl. at 7 ¶ 29. Specifically, the Complaint alleges that Defendant Simpson knew Defendant Lantigua was alive; that she signed and submitted to Plaintiff a Beneficiary Statement falsely representing that Defendant Lantigua had died; that she

did so "with the intent to induce [Plaintiff's] reliance on her Beneficiary Statement and the payment of the Death Benefit"; and that Plaintiff paid the benefits to Defendant Simpson "in direct reliance on [her] false statements." Id. at 7 ¶¶ 30-34. These allegations as to Defendant Simpson, in addition to allegations linking Defendant Lantigua to the fraud scheme (including allegations that the two Defendants conspired in the scheme, id. at 6 ¶ 26; id. at 7 ¶ 29, and that they were found together when Defendant Lantigua was arrested, id. at 6 ¶ 25), suffice to state a fraud claim against both Defendants.

### 3.  Unjust Enrichment Claim

Count 2 is an unjust enrichment claim against both Defendants. See id. at 6-8 ¶¶ 28-41. Such claims require that (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012) (citing Fla. Power Corp. v. City of Winter Park, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

Here, Count 2 states that Plaintiff's "payment of the Death Benefit to Defendant Simpson constitutes an unjust enrichment to [Defendant] Simpson and [Defendant] Lantigua at the expense of [Plaintiff]." Compl. at 8 ¶ 40. Plaintiff alleges in Count 2 that by paying Defendant Simpson the death benefits, Plaintiff "conferred a benefit upon [Defendants] to which they were not entitled"; that Defendants "benefitted by converting [Plaintiff's] property for their own use, enjoyment, and benefit"; and that Defendants "accepted and retained such benefits under circumstances that make it inequitable and unjust for them to retain such benefits." Id. at 8 ¶¶ 37-39. With these allegations and the more specific allegations of how Defendants induced Plaintiff to pay benefits to which Defendants were not entitled, see id. at 3-4 ¶¶ 10-15; id. at 5-6 ¶¶ 23-24, the Complaint sufficiently states a claim for unjust enrichment against both Defendants.

-7-

**C. Relief**

As Plaintiff states valid causes of action and, therefore, is entitled to entry of a default judgment, the undersigned must now determine whether a hearing is necessary to decide the amount of damages. "[A] judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation." United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979); see also SEC v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005). When the essential evidence regarding damages is before the court, a hearing on damages may be unnecessary. See Smyth, 420 F.3d at 1232 n.13.

Here, the undersigned finds that a hearing is unnecessary because the essential evidence relating to damages is before the Court. See id. Both motions for default judgment request judgments "in the amount of $500,214.60, plus costs." First Motion at 2;[7] Second Motion at 2;[8] see also Compl. at 8 (requesting compensatory damages and other relief). First, as to the requested $500,214.60 in damages, allegations in the Complaint indicate that Plaintiff is entitled to this amount because Plaintiff paid it in the form of death benefits to Defendant Simpson under the terms of Defendant Lantigua's insurance policy. See Compl. at 3 ¶ 12 (alleging that Plaintiff "issued a check to [Defendant] Simpson in the amount of $15,000 as payment for the Emergency Death Benefit"); id. at 4 ¶ 15 (alleging that Plaintiff "issued a check to [Defendant] Simpson in the

---

[7] Attached to the First Motion are several exhibits, which were filed along with the First Motion as one single document in the Court's Electronic Case Filing System. The page numbers assigned to these exhibits by the Electronic Case Filing System are continuous with the page numbers of the First Motion itself. The undersigned refers to the exhibits by these page numbers.

[8] Attached to the Second Motion are several exhibits, each assigned by the Court's Electronic Case Filing System with a separate document number and separate pagination. The undersigned refers to the exhibits by these document numbers and page numbers.

amount of $485,214.60, which, in addition to the Emergency Death Benefit, represented the total death benefit under the Policy"). Attachments to both motions support these allegations. See First Motion at 5-6 (copy of $15,000 check paid by Plaintiff to Defendant Simpson and endorsed by Defendant Simpson); Doc. No. 16-2, at 1-2 (same, in attachment to Second Motion); First Motion at 7-8 (copy of $485,214.60 check paid by Plaintiff to Defendant Simpson and endorsed by Defendant Simpson); Doc. No. 16-2, at 3-4 (same, in attachment to Second Motion).

As to the requests for costs, Rule 54(d) creates a "strong presumption that the prevailing party will be awarded costs." Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007) (citing Arcadian Fertilizer, L.P. v. MPW Indus. Serv., Inc., 249 F.3d 1293, 1296 (11th Cir. 2001)). As directed by the undersigned, see Order (Doc. No. 17), Plaintiff's Supplemental Memorandum sets out specific cost amounts that it requests, see Suppl. Mem. at 1-2.[9] Plaintiff alleges that it spent $400 in filing fees to initiate this action and $150 in service of process fees, for a total of $550 in costs. Id. at 2. Attached documents support these cost amounts. See id. at 4-5 (Supplemental Affidavit of Nolan B. Tully in Support of the Five Star Life Insurance Company's Motion for Default Judgment); id. at 7 (invoice for $50 for service of process to Defendant Simpson); id. at 9-12 (letter to Buncombe County Sheriff's Office requesting service on Defendant Lantigua for this case and another case, along with attached $50 checks); id. at 13-14 (second letter to Buncombe County Sheriff's Office requesting service on Defendant Lantigua with attached $50 check).[10]

Accordingly, Plaintiff is entitled to a judgment in the amount of $500,764.60 ($500,214.60

---

[9] Attached to the Supplemental Memorandum are several exhibits, which were filed along with the Supplemental Memorandum as one single document in the Court's Electronic Case Filing System. As with the First Motion, the page numbers assigned to these exhibits by the Electronic Case Filing System are continuous with the page numbers of the Supplemental Memorandum itself. The undersigned refers to the exhibits by these page numbers.

[10] As noted, Plaintiff's first attempt to serve Plaintiff failed. See Doc. No. 7.

in damages plus $550 in costs), for which both Defendants are jointly and severally liable. See Allstate Ins. Co. v. Palterovich, 653 F. Supp. 2d 1306, 1334 (S.D. Fla. 2009) (imposing joint and several liability for fraud and unjust enrichment claims in a default judgment "because, under Florida law, '[j]oint and several liability exists where two or more wrongdoers negligently contribute to the injury of another by their several acts, which operate concurrently, so that in effect the damages suffered are rendered inseparable'") (quoting Albertson's, Inc. v. Adams, 473 So. 2d 231, 233 (Fla. 2d DCA 1985)).

## IV. Conclusion

Upon review of the Motion and the file, and for the foregoing reasons, the undersigned finds that Plaintiff has met the requirements for entry of a default judgment against Defendants.

Accordingly, it is

**RECOMMENDED**:

1. That Plaintiff Five Star Life Insurance Company's Motion for Entry of Default Judgment (against Defendant Simpson) (Doc. No. 11) and Plaintiff Five Star Life Insurance Company's Motion for Entry of Default Judgment (against Defendant Lantigua) (Doc. No. 16) be **GRANTED**.

2. That the Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amounts of $500,214.60 in damages and $550 in costs.

3. That the Clerk of Court be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on November 25, 2015.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

clr
Copies to:

Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record

Scott S. Gallagher
50 N. Laura St., Suite 2600
Jacksonville, Florida 32202

Stephen A. Serfass
Nolan B. Tully
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996

Charles B. Jimerson
Brent T. Zimmerman
JIMERSON & COBB, P.A.
701 Riverside Park Place, Suite 302
Jacksonville, Florida 32204

Jose Lantigua – LEGAL
Buncombe County Detention Facility
20 Davidson Drive
Asheville, North Carolina 28801

Daphne Simpson
Pretrial Detention Facility
Jail Number – 2015007772
500 E. Adams Street
Jacksonville, Florida 32202

The Corporation Trust Company
Registered Agent
153 Fox Den Road, LLC
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Michael Fox Orr, Esquire

Carl Dawson, Esquire
Jessica R. Creegan, Esquire
50 North Laura Street, Suite 1675
Jacksonville, Florida 32202

Katie L. Dearing, Esq.
Katherine C. Wagner, Esq.
The Dearing Law Firm, PA
300 W. Adams Street
Ste. 500
Jacksonville, FL 32202

Joseph G. Lantigua
6513 Westgate Drive #113
Orlando, Florida 32835